Good morning, Your Honors. David Beauvais appearing on behalf of the Plaintiffs and Appellants. This is a case that involves an unconstitutional intrusion upon a familial relationship where CPS came and removed the child from the custody of the mother. The court had asked us to furnish a 28-J letter concerning the impact of Burke v. County of Alameda on this case. I regret that I may have been too hasty in forming my conclusion that qualified immunity saves the individual defendant in this case. And I just note a couple of facts and circumstances that are different here from what appears in Burke. Okay, this is 12b-6, right? I'm sorry? This is a 12, it was 12b-6 that this happened. This is 12b-6, right. So, and Burke occurred subsequently. So, you know, I guess what you're about to address is if Burke made it clearly established that there may have been a constitutional violation, then it wasn't there at that point, which would qualify the social worker for qualified immunity. And now you're saying you... Because Burke involved an omission. Burke involved a failure to investigate the noncustodial parent replacement. In this case, the child is with the mother, albeit outside the scope of the orders of the family court. But I don't think the orders of the family court guide the analysis in this court, because here we're not dealing with the rights of one parent versus another parent. We're dealing with government action that is intruding upon familial relationships with either one or both of the parents. This brings it to a different level. And I think, Judge Callahan, you made that clear in your decision in Britton v. Hansen, that that analysis in that case does not apply here. Well, tell me this, from the record, because it is 12b-6, so we have a limited record. We have, you know, we have the plating, and then there was judicial notice, I think, of that interim court order. What can we tell in the record about whether there was joint legal custody? Because, I mean, I know I was a California judge. So in that, in California, it's pretty routine that unless you're, you know, abusing your children, judges fairly routinely give joint legal custody, they give physical custody to one parent, and they give visitation to the other parent. And the fact that one parent has the parent that has visitation, that doesn't mean that there's anything wrong with them as a parent. The courts just make a determination. I think there's sort of a presumption that it's better for children to live one place and visit another place, but in terms of legal custody, you know, what religion they're going to be, where they're going to go to school, what their medical care is going to be, that both parents generally get to do that. And I can't find anything in this record that tells us whether they had joint legal custody or not. Do we know that? Can we tell from this record? I don't think you can. I mean, the complaint alleges that my client was the legal custodian of the child. The court order that the district court took judicial notice of references a change of physical custody from the mother to the father on this interim basis. And so by using the term physical custody, I think that implies that there is some other kind of custody that wasn't changed, and that would have been legal custody. But we go back to the... Well, see, what I would say after Burke is I still think, well, I mean, tentatively, and you can disabuse me of this, but I still think the social worker's probably entitled to qualified immunity because it wasn't clearly established. But I think that the Monell claim, I don't know what, I don't know whether the county had a policy of removing children when, you know, I think it might be clearly established that, you know, if a person has legal custody and one has physical and the other has visitation, I don't know that you can still come in and say, okay, I'm going to just, just because you overstayed your visitation, I'm going to be the unarmed of the court, and I'm going to throw this child into, you know, into the children's shelter or into foster care. Right. It's totally unreasonable. If anything, if that was the purpose, then... If they have a policy of doing it, you might have a Monell claim. I don't know. But I still think probably there's qualified immunity for the social worker. But there's also here something, and I can't quite figure out what's going on here. It says that the child has a claim. I can't tell whether the child has a guardian, whether the mother's supposed to be the guardian. You know, the child wouldn't have capacity to sue. But I think on some level, children have a right to be with their parents over being in foster care. So what's the status of the child's claim? Is that even here or what's the status? Oh, yes, yes. The child's claim is here. In fact, I believe the child is now timed out. I think he's 18 now. I'm pretty sure he turned 18 this year or will by the end of the year. Did you act? I'm troubled by this complaint. Did you ask for leave to amend? No. The court granted leave to amend, didn't it? Yes. And you elected not to. You did not amend. I didn't think I could say anything in an amended complaint that would have addressed the Court's stated concern that we had no interest in custody of the child at the time of the removal because it was outside the mother's visitation period. So I think an amendment in this instance would have been futile because we wouldn't get back here anyway because the Court would have said, well, it was outside the custodial time, and therefore, there's no protected liberty interest. That's what we were dealing with. Well, you might have been able to allege what your actual custodial rights were, where that came from, as opposed to the conclusion that it was, quote, legal custody, close quote. Well, I don't know. I thought that was stated in the complaint already. It did say legal custody or called her a legal custodian, which is certainly what Burke was talking about, whether it was, you know, joint or not. Of course, it would have been joint, but as Judge Callahan pointed out, it's very common in California law for joint custody or joint legal custody determinations to be made. In fact, I think there's actually a preference in the Family Code for that kind of arrangement. But if that happened, why wouldn't it be appropriate to tell the trial court what the source of your allegation of custody was, your actual custodial rights? Well, I suppose that was possible, but I also don't think it was necessary. I mean, we're dealing in a 12b-6 context with a presumption that what's stated in the complaint is true, and it was stated that she was a legal custodian of the child. And once the court took judicial notice of the Family Court order, it was doubly clear that my client had some protected interest, now that we know what Burke says, in having — not having this intrusion on her — on her life. But I just wanted to point out very quickly the distinction between Burke and here, and I don't know that it amounts to one of legal significance, but I think it's important for the Court to at least assess it, and that is this child is physically with this mother when this social worker and these police officers come into the family court hearing at which the court was going to reevaluate this interim order giving the father custody. It doesn't sound terribly reasonable. Well, so you're — that's the argument you're making, why it would have been — that it was — that Burke wasn't necessary to make it clearly established, and why the social worker wouldn't be entitled to qualified immunity. Right, because Burke is dealing with a situation where the child's removed from one household, and what Burke was arguing was, well, you should have considered the noncustodial parents' rights here, and you just ignored those rights and took the child into foster care. Here, we have an affirmative act of coming to the residence and taking the child away before a family court hearing later that day, and in circumstances in which we allege this child was not in imminent danger of anything. So that is a factual distinction. How that translates into this — putting it in this rubric of a liberty interest, I'm not really sure. You know, we say possession is ninth sense of the law. I don't like to think of children as objects that we possess, but — You hadn't — there was no legal order giving her the right to have physical custody of the child at that time. No, there wasn't. What the social worker should have done was get a five-day EPO, emergency protective order, to preserve the status quo with the mother until in case it could be heard in either the juvenile court or in the family court. But in this instance, the family court was getting ready to hear it, and I'm almost out of time. Thank you. Good morning, Your Honor. My name is Sadhana Narayan, and I will be arguing — Speak up a little. I'm sorry. My name is Sadhana Narayan, and I will be arguing the County of Alameda and Caroline Locativo social worker's case today. I'm going to go into my prepared statements first, but I definitely do want to respond to a few of the things that counsel has mentioned. The main issue in this case is whether or not the social worker should have the deprivation of a constitutional right. And I think that this Court has hit the nail on the head when the Court comes to the point of saying, look, where were the facts that were supported by judicial notice that, in this case, this woman had legal custody or physical custody of this child? Okay, but it is a 12b-6. I understand. And in their pleadings, they say she's a legal custodian, okay? And that has to be presumed true for 12b-6 purposes. I understand. And then there's something there talking about visitation. And so why — you know, I'm tentatively with you on the fact that the social worker would be entitled to qualified immunity because Burke wasn't out. I think, had Burke been out, I think that parents that have legal — that are legal custodians, you can't just go out and take their — you can't go put them in foster care because they've exceeded their visitation. I think that Burke would stand for that proposition. But I want to know, on the Monell claims, how can you tell on 12b-6 that the county doesn't, you know — I don't think the county can just go snatch people's children and put them in foster care when there's another parent that might have legal custody. No, absolutely not. But what we have in this situation, and the facts are very — the problem that the county had in this case was that the facts are so sparse in the complaint. I mean, it's just absolutely ridiculous. It was very difficult to respond and even more difficult to try to make an analysis of what cases apply. Well, that's why you might win on summary judgment, in my view, and not on a 12b-6. But what happened was we filed a request for judicial notice, and the request for judicial notice, which was not opposed, said that there was a court order that indicated that this mother had visitation rights. But that doesn't deal with joint legal custody. They're two separate things. There's joint legal custody, and then there's physical, and there's visitation. So how do we know from this that this mother didn't have — because what we do have here is her statement in the complaint that she has — she's a legal custodian. The fact that she has only visitation means she's not the — that she doesn't have — she's not — she doesn't have physical custody. It doesn't mean she doesn't have joint legal custody. Well, whose — whose obligation is it now to plead a claim? It is — I believe it is the plaintiff's obligation to plead the claim properly. And in this case, we had a document that said that the only rights that this mother had was for visitation. The court came back and said, look, I'm very concerned because you're telling me that you have legal custody. I have a court order that only talks about visitation. What is it? Do you have something that shows that you have legal custody of this — of this  Because right now, I have something that seems to be contrary. The court order that you had — I'm sorry, but I don't see — I don't see some of the documents in the excerpt. So the court order that you had was what? Was it a decree or what was it? Yes. It was a court order that was operative at the time of the — The interim order. Yeah, the interim order. It was operative at the time that the action took place. And in the interim order, the judge comes back and takes the child and puts the child back with the father and gives the mother visitation rights. Now, we produced that order. That order was not objected to. Judge Armstrong took a look at the order and said, wait a minute. This only talks about visitation. Where is your right to be — to have legal custody of this child? Now, she actually invited the plaintiff to prepare — gave her additional time to actually respond to this. In their brief — and I want to point this out. In their brief to our motion, where Judge Armstrong had said, look, I'm going to have you refile the motion because I want to give the opposing side plenty of time to respond to this because I feel like I'm being misled here. They don't even address it in their brief. They don't even address it. And if you look at the appellant's opening brief in this case, it's not even addressed in there that she has legal custody. But may I — But under 12b-6, if they say that she's a legal custodian, isn't that enough? The fact that you produced something that says she has visitation, how does that rebut that she's a legal custodian? I believe that the judicial notice showed contradictory facts that show that she only had visitation rights. It did not reference any other rights that this mother had. All right. But do you resolve — but is it a court's function under 12b-6 to resolve factual disputes? I believe that in a — No, not what you believe. Under the law, does a court resolve factual disputes on a 12b-6? When the court takes a judicial notice of a fact that's contradictory to a fact that's asserted, I believe the court can make that determination. And that's what happened here. There was — What's your authority for that? There was — I do cite it in my brief, Your Honor, that when there's a contradictory fact. Your Honor, I'm sorry. I don't have the actual cite. Are you arguing that there's a contradictory fact or that there is something which spells out what the legal rights of the parties are? I'm asserting that here in this case that there was a fact asserted. Judicial notice was taken of something that indicated it was not true, that there was only visitation. The court came back and the court asked the opposing side to resolve that and tell me what — if your assessment is true. But how is visitation, only visitation, inconsistent with — in California, you have — you have legal custody. That's one. And then below that, you have physical and you have visitation. How is the fact that someone only has visitation, how does that prove they aren't a joint legal custodian? Well, Your Honor, in this case, there was no physical custody. There was only visitation. The order actually talks about the fact that neither parent can make determinations regarding medical issues, regarding educational issues. The court was very clear on that. The court order seemed to indicate, although it wasn't clearly spelled out, that there was no legal custody on the part of definitely the mother. Now, the father, for sure, had physical custody of the child. Now, we presented that and the court took judicial notice of it, and the court came back and said again, and I want to stress very clearly, Judge Armstrong came back and said that by the fact that there doesn't appear to be any rights in this order indicating to me legal custody, I want to know where you're coming up with this fact that you have legal custody because it seems contradicted. And the plaintiff had an opportunity to amend its complaint or to even present any documents that could have been judicially noticed. They didn't even argue it, let alone present any information. I believe at that point, given that there was a request for judicial notice taken and that Judge Armstrong did feel that she was being misled, that she had a right to say, look, I'm going to take this as true, and I find this contradictory to your assertion that you had legal custody. I believe there was nothing wrong with them. I believe she did have a right to do that. Kagan. So she essentially kind of had a hearing on that, even though it was a 12-6? Correct. In terms of it being a request for judicial notice. And she is allowed to take that into consideration. Because it was judicial. This was a court document that was judicial. Correct. And it was not opposed. So she did not – I mean, there was no dispute on the document itself. Well, I guess, okay, since that document didn't speak to legal custody, so you can't – from that document, you can't say that the father had legal custody either. You can only say the father had physical custody. So why doesn't that document just say that the mother has overstayed her visitation by an hour, and now the county is going to go out and pull the child and put it in foster care? I'm sorry. I mean, is the county going to become an enforcement for whether when people overstay their visitation? No, not at all. This was – the problem, again, I have in this case is that I'm limited to the facts that are alleged, and there are very few facts. The facts here were there was an abuse allegation against the father. The father advised – the father and his attorney advised the social worker that there was a custodial order that indicated that there were no overnight visits with this mother, and that he did not under any circumstances want the child to be with the mother, and the mother did not have a right to be with the child. So it did, unfortunately, put the county in that position, and that's the problem that happened in the Bertain case. I'm quite familiar with that case. Correct. And in the Bertain case, the governmental entity was put in that position, and the first thing the federal court came back and said is, look, we don't want to be in a position where we're adjudicating custody issues, and that's exactly what happened here. This was a custodial issue. This was not a situation where there was an abuse allegation against the mother. The issue here was whether or not the mother had a right to be with the child when the child was being removed from the father. Was the abuse allegation against the stepfather? Against the father, Troy, yes. Okay. Yes, Your Honor. And, again, the problem is the complaint is so bereft of facts that it put us in a position of having to ---- Well, now, what about the situation of the child? Doesn't the child have a right to be with a parent over going to foster care? Correct, but if there was no ---- again, as in Bertain, there is a court order here from the Family Law Court that says that there are no overnight visits. This was a very limited visitation schedule that this mother had. And the county was put in a position of doing a removal from the father, but at the same time having to figure out, you know, is there a violation of a court order? Can we put this child with this mother? And the father is saying no. The father's lawyer is saying no. The situation is such, again, like in Bertain, where you end up being in the middle of a custody dispute. So our argument to the court is that that's exactly what Bertain was trying to avoid, having the county actors be involved in that type of situation and to be sued under the statute. And so our argument is that since they're here, there is no constitutional deprivation, that there is no claim, a cognizant claim, under the statute. That's our argument. And as to qualified immunity, I do want to just add that I do agree with the Court, and I do believe that given the Burke decision, given that this action happened right around the time the Burke action happened, the law was not clear and that qualified immunity definitely should apply. Okay. You're over time. Oh, I'm sorry. Are there any further questions? Thank you. Thank you. Thank you. Are there any further questions of the appellant? All right. Thank you. Thank you. The case just argued is submitted for decision.
judges: Lynn, Schroeder, Callahan